UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SHIRLEY JONES, on Behalf of Herself and All Others Similarly Situated, | ) ) ) | Case No. 10-8668 SVW (CW) |
| Plaintiffs, | ) ) ) | **Order Granting Defendant's Motion for Summary Judgment** [32] **and Denying Plaintiff's** |
| vs. | ) ) | **Motion for Partial Summary Judgment** [26] |
| CORBIS CORPORATION, | ) ) | JS6 |
| Defendant. | ) | |

## I.   Introduction

On November 12, 2010, Shirley Jones ("Plaintiff"), an actress and vocalist, filed a class action complaint against Corbis Corporation ("Defendant").  Defendant is a Nevada Corporation and an online provider of copyright licenses for images.  Defendant maintains a library of millions of images and it offers copyright licenses for sale by displaying sample images on its websites.  Plaintiff alleges that Defendant's act of displaying sample images violates her common law and statutory rights of publicity by exploiting her name, image, and likeness for purposes of financial gain without her consent.

Plaintiff has now moved to certify a class of similarly situated

1   individuals and for summary judgment on her individual claims.

2   Defendant has also moved for summary judgment, arguing that (1)

3   Plaintiff consented to the use of her image; (2) Defendant's use is

4   protected by the First Amendment; or (3) Plaintiff's claims are

5   preempted by the Copyright Act.   Defendant also argues that class

6   certification is improper.

7       **A.   History**

8       The Court has addressed similar claims in a prior case against

9   Defendant in <u>Alberghetti v. Corbis</u>, 263 F.R.D. 571 (C.D. Cal. 2010).

10  In that case, the plaintiff put forth similar allegations of violations

11  of common law and statutory publicity rights against Defendant.   The

12  Court denied class certification because it found that individual

13  plaintiffs were not adequate representatives of class members with

14  respect to injunctive relief and Court noted issues with providing

15  notice to class members.   <u>Id.</u> at 577-78.   Subsequently, the Court

16  granted Defendant's Motion for Summary Judgment as to the individual

17  plaintiffs because the plaintiffs' claims were barred by the statute of

18  limitations.   <u>Alberghetti v. Corbis</u>, 09-05735-SVW (AJWx), Doc. No. 99

19  (C.D. Cal. May 20, 2010).

20      **B.   Facts**

21          **(1)   Defendant's Business**

22      The facts are uncontroverted.[1]   Defendant maintains several

23

24      [1] Plaintiff has not put forth a separate statement of genuine disputes
25  of material fact in opposition to Defendant's statement of
    uncontroverted facts.   Local Rule 56-2 states:
26          Any party who opposes [a motion for summary judgment]
            shall serve and file with the opposing papers a
27          separate document containing a concise "Statement of
            Genuine Disputes" setting forth all material facts as
28          to which it is contended there exists a genuine

1   websites that contain a library of millions of images available to

2   prospective end-users.  (Defendant's Statement of Uncontroverted Fact,

3   "DSUF" ¶ 1).    The images depict a variety of scenes, products, current

4   events, celebrities and entertainers.  (DSUF ¶ 2).   Defendant obtains

5   these images by entering into representation agreements with cultural

6   institutions, news wire services, and professional photographers.

7   Typically, the photographers and institutions from whom Defendant

8   obtains images retain copyright ownership over the images and license

9   Defendant to distribute sublicenses on their behalf.  In exchange for

10  this license to distribute additional copyright licenses to end-users,

11  Defendant agrees to share a portion of licensing revenues with the

12  institutions and photographers.  (DSUF ¶¶ 3-5).   Defendant's customers

13  include news services, educational institutions, magazines, and media

14  users.

15      In order to market and provide access to images to its customers,

16  Defendant maintains several websites.  Website users can type search

17  terms in a search box to view available images that match these search

18  _____

19          dispute necessary to be litigated.
            As such, the Court finds the facts are uncontroverted.  See

20  Sullivan v. Dollar Tree Stores, Inc., 623 F.3d 770, 779 (9th Cir.
    2010) (Federal Rule of Civil Procedure 56(e)(2) requires a party to

21  "set out specific facts showing a genuine issue for trial.").   If the
    non-moving party fails to identify the triable issues of fact, the

22  court must treat the moving party's evidence as uncontroverted.
    Local Rule 56-3; see also International Longshoremen's Ass'n, AFL-CIO

23  v. Davis, 476 U.S. 380, 398 n.14 (1986) ("[I]t is not [the Court's]
    task sua sponte to search the record for evidence to support the

24  [parties'] claim[s]."); Carmen v. San Francisco United School
    District, 237 F.3d 1026, 1029 (9th Cir. 2001) ("A lawyer drafting an

25  opposition to a summary judgment motion may easily show a judge, in
    the opposition, the evidence that the lawyer wants the judge to read.

26  It is absurdly difficult for a judge to perform a search, unassisted
    by counsel, through the entire record, to look for such evidence.").

27

28

1   terms.  For example, users can type names of celebrities, events, or

2   items.  Low quality sample images matching those terms will appear on

3   the website.  (DSUF ¶¶ 6-9).  If a user wishes to purchase a copyright

4   license for an image, Defendant provides the copyright license for a

5   price.  The price depends on the nature of the use of the photograph,

6   the resolution of the image, the location where the image is placed,

7   the territory of the use of the image, the duration of the license, the

8   exclusivity of the license, and whether the licensing model is rights-

9   managed or royalty-free.  (Feduff Decl. ¶¶ 55-56).

10      Defendant expressly states to its customers that it licenses only

11  the copyright in its images and not any other rights such as trademarks

12  or the rights of publicity.  Defendant's license agreements state that

13  licensees are responsible for determining whether additional consents

14  are required for use.  (DSUF ¶ 15).  After the purchase of a license

15  has been completed, Defendant provides the user a digital version of

16  the image.  Defendant does not sell any tangible products containing

17  the images.

18          **(2)  Images at Issue**

19   Plaintiff alleges that Defendant violated her statutory and common

20  law rights of publicity by using her name, image, and likeness without

21  her consent.  Essentially, Plaintiff alleges that Defendant is

22  violating these rights by displaying sample images of her likeness on

23  its website.  According to Plaintiff, the search feature on the

24  websites matches her name ("Shirley Jones") with these images.

25  Plaintiff asserts that displaying these sample images associated with

26  her name helps Defendant sell its product – a copyright license for the

27  images.

28

1    Defendant's display of ten sample photographs of Plaintiff is

2  specifically alleged to have violated Plaintiff's rights of publicity.

3  It is undisputed that the ten photographs were taken by individual

4  photographers who then licensed the images to Defendant for the purpose

5  of selling additional licenses to end-users.   Each of the ten

6  photographs were taken on "red carpets."   It is custom and practice in

7  the entertainment industry for celebrities to walk down a red carpet

8  surrounded by professional photographers and video crews before

9  entering an event.   Celebrities may generally choose to walk down the

10  red carpet or enter the event through another way where they will not

11  be photographed.   Celebrities who walk down the red carpet generally

12  pose for photographers and respond to their requests to smile, or to

13  look in their direction.   Jones Depo. 144: 9-14.   Notices are sometimes

14  posted at these events stating that the celebrities entering the red

15  carpet consent to being photographed and recorded, and also to having

16  their name or likeness used in connection with the event.   (DSUF ¶¶ 26-

17  36).

18    It is undisputed that Plaintiff posed for and consented to the

19  taking of each of the ten photos at issue.   Plaintiff testified that

20  she knew one photographer, Frank Trapper, who took four of the photos

21  at issue.   Plaintiff testified that she knew that Frank Trapper

22  distributed his images to the press, but was not aware how he did so.

23  However, Plaintiff understood that a photographer such as Trapper would

24  have to display his images to prospective buyers to allow the buyers to

25  select a desired image.   Plaintiff stated that she would not be

26  surprised if photographers such as Trapper worked with other people to

27  make his images available to the press.   Plaintiff has not placed any

28

1 limits on the distribution of photographs taken at red carpet events

2 over her 40 year career.

3 **II.   Legal Standards**

4     **A.    Summary Judgment**

5     Rule 56(c) requires summary judgment for the moving party when the

6 evidence, viewed in the light most favorable to the nonmoving party,

7 shows that there is no genuine issue as to any material fact, and that

8 the moving party is entitled to judgment as a matter of law. See Fed.

9 R. Civ. P. 56(c); Tarin v. County of Los Angeles, 123 F.3d 1259, 1263

10 (9th Cir. 1997).

11     The moving party bears the initial burden of establishing the

12 absence of a genuine issue of material fact. See Celotex Corp v.

13 Catrett, 477 U.S. 317, 323-24 (1986). The moving party may satisfy its

14 Rule 56(c) burden by "'showing' -- that is, pointing out to the

15 district court -- that there is an absence of evidence to support the

16 nonmoving party's case." Celotex, 477 U.S. at 325. Once the moving

17 party has met its initial burden, Rule 56(e) requires the nonmoving

18 party to go beyond the pleadings and identify specific facts that show

19 a genuine issue for trial. See id. at 323-24; Anderson v. Liberty

20 Lobby, Inc., 477 U.S. 242, 248 (1986). A scintilla of evidence or

21 evidence that is merely colorable or not significantly probative does

22 not present a genuine issue of material fact. Addisu v. Fred Meyer, 198

23 F.3d 1130, 1134 (9th Cir. 2000). Only genuine disputes "where the

24 evidence is such that a reasonable jury could return a verdict for the

25 nonmoving party" over facts that might affect the outcome of the suit

26 under the governing law will properly preclude the entry of summary

27 judgment. See Anderson, 477 U.S. at 248.

28

1  **B.   Class Certification**

2      The District Court has broad discretion to grant or deny a motion

3  for class certification.  See Zinser v. Accufix Research Inst., Inc.,

4  253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir.

5  2001); see also Molski v. Gleich, 318 F.3d 937, 947 (9th Cir. 2003).

6      In a motion for class certification, the burden is on the moving

7  party to make a prima facie showing on each of the elements of Rule

8  23(a) and at least one of the class types under Rule 23(b).  See

9  Zinser, 253 F.3d at 1186. Under Rule 23(a), a plaintiff must

10 demonstrate numerosity, commonality, typicality, and adequate

11 representation of the class interest.  Fed. R. Civ. P. 23(a).  Under

12 Rule 23(b), the moving party must also show that (1) denying class

13 certification would create a risk of inconsistent adjudications or

14 would substantially impair or impede the interests of other class

15 members; (2) injunctive or declaratory relief is appropriate respecting

16 the class as a whole; or (3) questions of law or fact common to class

17 members predominate over any individualized questions and that a class

18 action is superior to other available methods of adjudicating the

19 controversy.  Fed. R. Civ. P. 23(b).

20 **III. Discussion**

21     **A.   Evidentiary Objections**

22     Defendant Corbis objects to statements made in two declarations in

23 support of Plaintiff's Motion for Summary Judgment.  The first

24 statement is Plaintiff's statement that she did not "authorize or

25 consent to Corbis' use of the ten photographs."  Jones Decl. ¶ 5.  The

26 ultimate determination of consent is a legal conclusion.  United States

27 v. Toribio-Lugo, 376 F.3d 33, 38 (1st Cir. 2004) ("Whether the facts as

28

1  found add up to consent is a legal determination."). Defendant argues

2  that while Plaintiff may testify to facts relevant to the legal

3  determination of consent, she may not testify as to the legal

4  determination itself.  See Fed. R. Civ. P 56(c)(4); Civil L.R. 7-7;

5  Nationwide Transport Finance v. Cass Information Sys, Inc., 523 F.3d

6  1051, 1059-60 (affirming district court's decision to exclude witness'

7  legal conclusion as to violation of UCC); See also Sullivan v. Dollar

8  Tree Stores, Inc., 623 F.3d 770, 779 (9th Cir. 2010) ("Federal Rule of

9  Civil Procedure 56(e)(2) requires a party to "set out specific facts

10  showing a genuine issue for trial."). The Court agrees, and SUSTAINS

11  Defendant's objection.[2]

12     Defendant also objects to the Declaration of Arthur Gold,

13  Plaintiff's attorney, who states that "[c]elebrities and professional

14  models usually sign a limited release or 'model release' that specifies

15  the particular ways their image and name may be used.  If a use exceeds

16  what's permitted under the limited release, the person can sue for

17  breach of the agreement."  Gold. Decl. ¶ 5 n.1.  Defendant argues that

18  there is no foundation or personal knowledge for Gold's assertion.  The

19

20  [2] To the extent that Plaintiff intends to introduce this evidence to
21  show that she did not *expressly* state in writing, or otherwise, that
     she consented to Defendant's use of the photographs, it is
22  admissible.  However, Defendant does not suggest that Plaintiff
     *expressly* consented, but argues instead that Plaintiff manifested her
23  consent through her conduct and inaction.  As discussed below, even
     if Plaintiff subjectively believed she did not consent, she did not
24  manifest this belief.  Consent is determined from the reasonable
     viewpoint of another person, not from Plaintiff's unexpressed
25  subjective beliefs.  Restatement Second of Torts § 892 ("Consent is
     willingness in fact for conduct to occur. It may be manifested by
26  action or inaction and need not be communicated to the actor.  [] If
     words or conduct are reasonably understood by another to be intended
27  as consent, they constitute apparent consent and are as effective as
28  consent in fact."); CACI § 1302 (same).

1  Court agrees, and SUSTAINS Defendant's objection.

2      **B.    Cross Motions for Summary Judgment**

3      Defendant argues that summary judgment is appropriate because (1)

4  Plaintiff consented to Defendant's distribution of copyright licenses;

5  (2) Defendant is entitled to First Amendment protection from

6  Plaintiff's right of publicity claim; or (3) Plaintiff's claim is

7  preempted by the Copyright Act.  The Court GRANTS Defendant's Motion

8  for Summary Judgment because Plaintiff consented to Defendant's

9  distribution of copyright licenses.

10      "To sustain a common law cause of action for commercial

11  misappropriation, a plaintiff must prove: (1) the defendant's use of

12  the plaintiff's identity; (2) the appropriation of plaintiff's name or

13  likeness to defendant's advantage, commercially or otherwise; (3) lack

14  of consent; and (4) resulting injury."  <u>Downing v. Abercrombie & Fitch</u>,

15  265 F.3d 994, 1001 (9th Cir. 2001) (internal citations and quotations

16  omitted); <u>Newcombe v. Adolf Coors Co.</u>, 157 F.3d 686, 692 (9th Cir.

17  1998) (same); Cal. Civ. Code § 3344(a) ("Any person who knowingly uses

18  another's name, voice, signature, photograph, or likeness, in any

19  manner…without such person's prior consent…shall be liable for any

20  damages sustained by the person or persons injured as a result

21  thereof.").

22      Furthermore, California Civil Code § 3344 provides a statutory

23  remedy for commercial misappropriation.  "Under section 3344, a

24  plaintiff must prove all the elements of the common law cause of

25  action.  In addition, the plaintiff must allege a knowing use [without

26  consent] by the defendant as well as a direct connection between the

27  alleged use and the commercial purpose."  <u>Id.</u>

28

**(1)  Lack of Consent**

Consent to use a name or likeness need not be express or in writing, but it may be implied from the consenting party's conduct and the circumstances of the case.  See Newton v. Thomason, 22 F.3d 1455, 1461 (9th Cir. 1994) (granting summary judgment to defendant in right of publicity suit because plaintiff failed to show a lack of consent even though plaintiff never expressly consented but expressed excitement about the use of his likeness and never objected to the use of his likeness over several months); Hill v. National Collegiate Athletic Assn., 7 Cal.4th 1, 26, Cal.Rptr.2d 834, 849 (Cal. 1994) ("[T]he plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant."); Rest. 3d Unf. Comp.§ 46, cmt. f. ("In the absence of an applicable statute requiring consent in writing, consent can also be implied from conduct or inaction reasonably interpreted as manifesting consent."); Cal. Civ. Code § 3344 (not requiring consent in writing).

Here, Plaintiff does not dispute that she consented to having individual photographers at red carpet events photograph her likeness and distribute the images.  Jones Depo. 153:12-155:10; 163:7-12. Plaintiff concedes that for the ten photographs at issue, she chose to walk down the red carpet knowing photographers would take her picture. Plaintiff also does not dispute that it is the custom and practice in the entertainment industry that red carpet photographs are widely used and disseminated.  Trapperl Decl. ¶ 6; Teetzel Decl. ¶ 6.  When Plaintiff is on the red carpet, it is Plaintiff's practice to pose for

1  photographers and agree to their requests to smile or to look in their

2  direction.  Jones Depo. 144: 9-14.  Finally, Plaintiff does not dispute

3  that for at least one of the events at which the pictures were taken, a

4  notice was posted at the entrance of the red carpet.  Teetzel Decl. Ex.

5  A.  The notice stated that by entering the premises, Plaintiff

6  consented to being photographed, and her name, voice and likeness being

7  exploited by any and all means in connection with the event without

8  limitation.  Id.

9      Plaintiff's only argument is that she did not consent to

10  Defendant's placement of sample images on its websites for the purpose

11  of soliciting customers to sell copyright licenses for the images.

12  However, as discussed earlier, Plaintiff's subjective beliefs as to her

13  consent are not determinative; consent is measured from Plaintiff's

14  manifested action or inaction.[3]  Restatement of Torts § 892; CACI §

15  1302.  It is undisputed that Plaintiff voluntarily posed for

16  photographers, who she knew would display her images to prospective

17  buyers, for over 40 years without objection.  It was well understood in

18  the entertainment industry that potential customers would not purchase

19  images they could not see before the purchase.  Jones Depo. 153:21-25;

20  154:1-3; Trapper Decl. ¶¶ 10, 14.  Prior to the use of the internet to

21  display images to prospective customers, photographers would hand

22  deliver catalogues of sample images so potential customers could select

23  images to purchase.  Trapper Decl. ¶ 14.  Thus, not only did Plaintiff

24  understand that her red carpet photographs would be displayed to

25

26      [3] In any case, Plaintiff acknowledges that she understood at the time

27  that individual photographers taking her pictures would have to
    display their photographs to sell them.  Jones Depo. 153:21-25;

28  154:1-3.

1    potential customers to solicit sales and do nothing for over 40 years,

2    but the undisputed record shows it would be contrary to well-

3    established industry practices for a celebrity to consent to the sale

4    and distribution of her photographs but not consent to the display of

5    the photographs to potential customers to facilitate sales.

6          Newton v. Thomason, 22 F.3d 1455, 1461 (9th Cir. 1994), is

7    directly applicable to the facts discussed above.  In Newton, the Ninth

8    Circuit granted summary judgment to defendants because the plaintiff

9    asserting a violation of its right of publicity failed to show a lack

10   of consent.  The court noted that the plaintiff did not expressly

11   consent to the use of his name, nonetheless, it concluded that no

12   "fair-minded jury could find non-consent based on [the plaintiff's]

13   July 18, 1990 letter and subsequent conduct."  Id.  In the July 1990

14   letter to the defendants, the plaintiff stated that he and others were

15   excited that the defendants were using his name.  Further, the

16   plaintiff never objected to the use of his name until December 1990,

17   several months after he found out his name was being used.  Plaintiff

18   attempted to show that the defendants did not believe there was consent

19   by pointing to the fact that the defendant's lawyer later requested

20   consent in writing.  However, in rejecting this argument, the Ninth

21   Circuit found that the lawyer's cautiousness in seeking express consent

22   did not override the plaintiff's failure to object.  This fact coupled

23   with Plaintiff's expression of excitement in his letter made it obvious

24   that the plaintiff did consent.  Id.  As in Newton, Plaintiff

25   voluntarily posed on the red carpet for photographers who she knew

26   would sell her likeness and name.  Plaintiff has not objected to such

27   sales and the record makes clear that any objections would be contrary

28

1  to industry custom given the circumstances.  Additionally, even further

2  damaging than the facts in <u>Newton</u> where the defendants later sought

3  express consent from the plaintiff, Plaintiff can point to no evidence

4  showing photographers had a reason to believe she did not consent to

5  their use of her name and likeness in selling red carpet photographs.

6  Thus, Plaintiff does not attempt to argue that individual photographers

7  would be unable to post her photographs on websites to solicit sales.

8      Instead, Plaintiff argues that the scope of her consent to allow

9  the use and distribution of her likeness is limited only to the efforts

10  of the individual photographers who took the photographs to distribute

11  their photographs.  She contends that her consent does not extend to

12  Defendant's display of her images to solicit sales of the image.

13  However, Plaintiff does not show that a genuine dispute of material

14  fact exists as to lack of consent.[4]  Moreover, Plaintiff's legal

15  authority is entirely distinguishable.

16      Plaintiff cites to <u>Perfect 10, Inc. v. Talisman Communications,</u>

17  <u>Inc.</u>, 2000 U.S. Dist. LEXIS 4564 (C.D. Cal. 2002).  In <u>Perfect 10</u>, the

18  district court entered default judgment against a website operator,

19  finding the defendant liable under § 3344(a) for posting images of

20  models on its website.  The models had expressly consented to the use

21  and display of their images with the plaintiff, Perfect 10.  However,

22  defendant took the images from Perfect 10's website and posted them on

23  its own website.  Plaintiff argues that <u>Perfect 10</u> stands for the

24  proposition that "the mere act of assigning rights to publicity to one

25

26      [4] As discussed above, even if Plaintiff's conclusory legal conclusion

27  as to her consent were admissible (which it is not), Plaintiff's
    unexpressed subjective beliefs are irrelevant to whether

28  photographers reasonably believed Plaintiff had consented.

1  entity does not allow an unrelated third party to appropriate the

2  pictures without prior consent."  Opp'n at 3.  However, the case

3  contains no discussion of this general proposition.  Nowhere does the

4  court state that the models' consent was required, instead the court

5  expressly states only Perfect 10's consent, as the models' assignee,

6  was required to post the images.  Id. at *9 ("All of the Defendant's

7  acts were performed without the permission, license or consent of

8  Perfect 10.").  In this case, Plaintiff contends that Defendant needs

9  *her consent*, not just individual photographers' consent as assignors,

10  to place sample images on its website.  Even if Perfect 10 is

11  applicable to the issues in this case, it is distinguishable because

12  the photographers taking her photos gave Defendant consent to display

13  sample images.  In Perfect 10, there was no relationship between

14  Perfect 10, the entity to which consent was given by the models, and

15  the defendant.  In fact, the parties were competitors and the defendant

16  appropriated the images from Perfect 10 without permission.  By

17  contrast, the undisputed record in this case establishes that Defendant

18  is the assignee of the photographers that took Plaintiff's photos.

19  Individual photographers retain copyright ownership over their photos

20  in exchange for Defendant's promise to distribute additional

21  sublicenses and to share a portion of the proceeds.  The photographers

22  assign all of their rights in the images to Defendant, which in turn

23  sublicenses copyrights to end-users with the express limitation that

24  end-users must obtain additional rights (such as the right of

25  publicity) on their own.

26       For the reasons discussed above, Plaintiff's remaining authority

27  is also inapplicable.  KNB Enterprises v. Greg Matthews, 78 Cal. App.

28

1  4th 362, 373 (2000) ("In this case, although the models consented to

2  have plaintiff display, copy, publish, or assign the photographs as he

3  pleased, *plaintiff* did not assign those rights to defendant.")

4  (emphasis added); <u>Phole v. Cheatham</u>, 724 N.E. 2d 655, 661 (2000)

5  (finding wife's consent to being privately photographed by her husband

6  could not be extended to cover husband's public distribution of

7  photographs); <u>Mihail Simeonov v. Albert Ashforth, Inc.</u>, 159 Misc.2d 54,

8  602 N.Y.S. 2d 1014 (1993) (finding defendant did not consent to public

9  distribution of plaster casting of her face when defendant hired

10  plaintiff to produce casting of her face for the limited purpose of

11  showing casting had no harmful effects to select individuals).

12      Furthermore, Plaintiff never indicated that her consent was

13  contingent on the individual photographers distributing the photos

14  themselves.  In fact, the undisputed factual record shows that

15  Plaintiff knew and understood that photographers on the red carpet

16  could employ third parties to assist them in distributing her photos.

17  However, Plaintiff made no objection.  Further, undisputed custom and

18  practice evidence supports a finding of consent.  Defendant merely

19  maintains a modern-day version of the catalogues of sample images that

20  would be hand-delivered to potential buyers in the past.  Defendant

21  published sample images as an assignee in place of the photographers.

22  Plaintiff testified that customers would not buy images without seeing

23  what they were buying and also that she consented to the sale of her

24  image by photographers.  In light of these undisputed facts, no

25  reasonable jury could find that Defendant's display for this purpose

26  was not consensual.  Any other holding would require that individual

27  photographers themselves market their photos or obtain express consent

28

15

1   from each subject prior to utilizing a third party distributor to

2   market their red carpet photos.[5]  Plaintiff presents no basis for such a

3   requirement.

4        It is important to note that the Court's reasoning does not

5   broadly restrict Plaintiff's right of publicity.  Here, Defendant sells

6   only the copyright license to the images taken by the photographers –

7   Plaintiff's likeness is not used to advertise any other product but the

8   copyright license to the image itself.  The Court's holding is thus

9   limited to the fact that Plaintiff consented to the display of her

10  likeness for the purpose of distributing the images themselves.

11  Further, the Court has found that Plaintiff consented to this display

12  whether or not the displaying parties are the photographers or third

13  parties like Defendant that merely act as distributors for the

14  photographers.  The Court's reasoning does not address whether

15  Plaintiff's consent encompasses any other type of display.  For

16  example, the Court's holding leaves Plaintiff's rights of publicity

17  undisturbed in cases where a defendant uses Plaintiff's image to

18  advertise an unrelated product such as a food item or if a defendant

19  transforms Plaintiff's image into a separate product.

20       For the reasons discussed above, Defendant's Motion for Summary

21  Judgment is GRANTED.

22  \\

23  \\

24  \\\

25  _____

26  [5] As discussed earlier, this express consent would be in addition to
    notices already posted at the entrance to some red carpet events, the

27  general industry knowledge that red carpet photographs are
    distributed widely, and Plaintiff's knowledge that photographers may

28  use other persons in helping them distribute their photos.

**C. Motion for Class Certification**

Having granted summary judgment to Defendant on Plaintiff's common law and statutory right of publicity claims, Plaintiff's Motion for Class Certification is moot. However, the Court notes that even if Plaintiff's claims survived summary judgment, Plaintiff did not meet her burden to show that the claims are susceptible to a class action lawsuit.[6] The Court's consent analysis above is highly individualized and depends on the circumstances surrounding each photograph, Plaintiff's knowledge of the circumstances, Plaintiff's past industry experience and conduct, and other evidence of Plaintiff's conduct that would reasonably imply consent. Thus, Plaintiff's claims are atypical, and questions of law and fact common to members of the class do not predominate over questions affecting individual members under Rule 23(b)(3). See In re N.D. Cal., Dalkon Shield Prods. Liab Litig., 693 F.2d 847, 855 (9th Cir. 1982); In re Wells Fargo Home Mortgage Overtime Pay Litig., 571 F.3d 953, 959 (9th Cir. 2009); see also Gartin v. S&M Nutec LLC, 245 F.R.D. 429, 434 (C.D. Cal. 2007) ("Where the substantive

---

[6] The Court also notes that Plaintiff is an inadequate representative because she does not fall within the class definition, which includes:

> All California residents, whose names, images, or likenesses, without their permission, have been exploited by Corbis, ***by selling licenses*** for these names, images, or likenesses which are accessed by consumers through a name search on the Corbis websites, during the applicable statute of limitations time period ***and then sold to these consumers*** via Corbis' websites, including www.corbis.com, www.corbismotion.com, or www.corbisoutlines.com.
> (Emphasis added).

Here, the undisputed evidence establishes that licenses to the ten photos at issue were never sold by Defendant. Plaintiff is not included in the purported class.

17

1  claims depend on individual permutations ... the claims of the named

2  plaintiffs who have the same general complaint against the defendant as

3  the class are not typical.") (quoting <u>Jones v. Allercare</u>, 203 F.R.D.

4  290, 299 (N.D.Ohio 2001) (quotations omitted).

5  **IV.   Conclusion**

6       Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's

7  Motion for Summary Judgment is DENIED.

8

9

10

11       IT IS SO ORDERED.

12

13       DATED:  May 25, 2011

14                                      STEPHEN V. WILSON

15                                      UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28